UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| JOHN DOE | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Case:   1:10-cv-00049 RMC |
| v. | ) | |
| | ) | |
| FEDERAL BUREAU OF INVESTIGATION, | ) | |
| and DEPARTMENT OF JUSTICE, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

**MOTION TO DISMISS**

Pursuant to Fed. R. Civ. P. 12(b)(1) and (b)(6), defendants Federal Bureau of

Investigation and United States Department of Justice move to dismiss plaintiff' complaint

pursuant to Fed. R. Civ. P. 12(b)(1) for lack of jurisdiction and Fed. R. Civ. P. 12(b)(6) for

failure to state a claim.

Respectfully submitted,

TONY WEST
Assistant Attorney General

RONALD C. MACHEN
United States Attorney

SUSAN K. RUDY
Assistant Branch Director

s/Marcia K. Sowles
MARCIA K. SOWLES, DC Bar No. 369455
Senior Counsel
United States Department of Justice
Civil Division, Federal Programs Branch
20 Massachusetts Avenue N.W.  Room 7114
Washington, D.C.  20530
Tel.: (202) 514- 4960

Fax: (202) 616- 8470
E-mail:  marcia.sowles@usdoj.gov

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| JOHN DOE | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Case: 1:10-cv-00049 RMC |
| v. | ) | |
| | ) | |
| FEDERAL BUREAU OF INVESTIGATION, | ) | |
| and DEPARTMENT OF JUSTICE, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

## MEMORANDUM IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS

TONY WEST
Assistant Attorney General

RONALD C. MACHEN
United States Attorney

SUSAN K. RUDY
Assistant Branch Director

MARCIA K. SOWLES, DC Bar No. 369455
Senior Counsel, U. S. Department of Justice
Civil Division, Federal Programs Branch
20 Massachusetts Avenue N.W. Room 7114
Washington, D.C. 20530
Tel.: (202) 514- 4960
Fax: (202) 616- 8470
E-mail: marcia.sowles@usdoj.gov

INTRODUCTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

BACKGROUND . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

A.    President's Authority to Limit Access to Classified Information . . . . . . . . . . . . . . . . . . . 3

B.    DOJ Regulations . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

PLAINTIFF'S FACTUAL ALLEGATIONS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

I.    PLAINTIFF'S DUE PROCESS CLAIMS IN COUNTS I AND II SHOULD BE
      DISMISSED FOR FAILURE TO STATE A CLAIM . . . . . . . . . . . . . . . . . . . . . . . . . . 8

      A.    Plaintiff Does Not Have A Protected Due Process Interest in A Security
            Clearance . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

      B.    Plaintiff Has Not Been Deprived Of A Protected Liberty Interest . . . . . . . . . . . . 11

            1.    Plaintiff Cannot Establish a Deprivation of a Liberty Interest under
                  the "Reputation-plus" Test . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

            2.    Plaintiff Cannot Establish a Deprivation of Liberty Interest under the
                  Stigma or Disability Test . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

II.   PLAINTIFF'S CHALLENGES TO THE BASIS FOR THE REVOCATION OF HIS
      SECURITY CLEARANCE IN COUNTS III AND IV SHOULD BE DISMISSED FOR
      LACK OF JURISDICTION AND FAILURE TO STATE A CLAIM . . . . . . . . . . . . . 17

      A.    Plaintiff's APA Challenge to the Merits of the Revocation Should Be
            Dismissed . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

      B.    Plaintiff's First Amendment Challenge to the Revocation of the Security
            Clearance Should Be Dismissed . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

III.  PLAINTIFF'S CLAIMS UNDER THE PRIVACY ACT SHOULD BE
      DISMISSED . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 28

      A.    Plaintiff's Privacy Act Challenge Must Be Dismissed On Separation Of
            Powers Grounds . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 29

B.     Plaintiff Has Failed To State A Privacy Act Claim . . . . . . . . . . . . . . . . . . . . . . . 31

CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 33

## TABLE OF AUTHORITIES

<u>CASES</u>                                                                                    <u>PAGE</u>

<u>Alexis v. District of Columbia</u>,
    44 F. Supp. 331 (D.D.C. 1999) ................................................................. 16

<u>Ambrose v. Twp. of Robinson</u>,
    303 F.3d 488 (3d Cir. 2002) ............................................................. 27, 28

<u>Ashcroft v. Iqbal</u>,
    129 S.Ct. 1937 (2009) ................................................................... 23,31

<u>Bd. of Regents v. Roth</u>,
    408 U.S. 564 (1972) ...................................................................... 12,17

<u>Beattie v. Boeing Co.</u>,
    43 F.3d 559 (10th Cir. 1994) ................................................................ 30

<u>Becerra v. Dalton</u>,
    94 F.3d 145 (4th Cir. 1996) .................................................................. 20

<u>Bell Atlantic Corp. v. Twombly</u>,
    550 U.S. 544 (2007) ...................................................................... 23,31

<u>Bennett v. Chertoff</u>,
    425 F.3d 999 (D.C. Cir. 2005) ............................................................... 25

<u>Bernard v. Dep't of Defense</u>,
    362 F. Supp. 2d 272 (D.D.C. 2005) .......................................................... 32

<u>Bishop v. Wood</u>,
    426 U.S. 341 (1976) .......................................................................... 13

<u>Brazil v. U.S. Dep't of Navy</u>,
    66 F.3d 193 (9th Cir. 1995) .................................................................. 25

<u>Chabal v. Reagan</u>,
    841 F.2d 1216 (3d Cir. 1988) ................................................................. 13

<u>Croddy v. Federal Bureau of Investigation</u>,
    Civil Action No. 00-651(EGS), 2006 WL 2844261 (D.D.C. Sept. 29, 2006) ................. 16,21

Department of Navy v. Egan,
  484 U.S. 518 (1988) .................................................................. passim

Doe v. Cheney,
  885 F.2d 898 (D.C. Cir. 1989) ........................................... 10, 15, 17

Dorfmont v. Brown,
  913 F.2d 1398 (9th Cir. 1990) ....................................... 10, 17, 18, 20

Duane v. United States Dept. of Defense,
  275 F.3d 988 (10th Cir. 2002) .................................................. 20

El Ganayni v. Dep't of Energy,
  591 F.3d 176 (3d Cir. 2010) ................................................. passim

Filebark v. U.S. Dep't of Transp.,
  542 F. Supp. 2d 1 (D.D.C. 2008), aff'd, 555 F.3d 1009 (D.C. Cir. 2009) ........................... 21

Fornaro v. James, 416 F.3d 63, 67 (D.C. Cir. 2005) ................................. 21

Guillot v. Garett,
  970 F.2d 1320 (4th Cir. 1992) ............................................... 20, 30

Hesse v. Dep't of State,
  217 F.3d 1372 (Fed. Cir. 2000) ................................................. 25

Hi-Tech Gays v. Defense Indus. Sec. Clearance Office,
  895 F.2d 563 (9th Cir. 1990) .................................................... 26

Hill v. Dep't of Air Force,
  844 F.2d 1407 (10th Cir.),
  cert. denied, 488 U.S. 825 (1988) ...................................... 10, 20, 24

Hubbard v. U.S. E.P.A. Adm'r,
  809 F.2d 1 (D.C. Cir. 1986) ..................................................... 31

Huynh v. Carlucci,
  697 F. Supp. 61 (D.D.C. 1988) .................................................. 26

Jamil v. Sec'y of Dep't. of Defense,
  910 F.2d 1203 (4th Cir.1990) ............................................. 10, 15, 20

Johnson v. Martin,
  943 F.2d 15 (7th Cir. 1991) ..................................................... 14

Jones v. Dep't of Navy,
    978 F.2d 1223 (Fed. Cir. 1992) .................................................................. 10, 15, 17

Kleiman v. Dep't of Energy,
    956 F.2d 335 (D.C. Cir. 1992) .................................................................. 31, 32

Levant v. Roche,
    384 F. Supp. 2d 262 (D.D.C. 2005) .................................................................. 32

Lovelace v. Stone,
    814 F. Supp. 558 (E.D. Ky. 1992) .................................................................. 25

Lyons v. Sullivan,
    602 F.2d 7 (1st Cir. 1979) .................................................................. 12

M.K. v. Tenet,
    196 F. Supp. 2d 8 (D.D.C. 2001) .................................................................. 12, 13, 16

Makky v. Chertoff,
    541 F.3d 205 (3d Cir.2008) .................................................................. 20, 25

Mosrie v. Barry,
    718 F.2d 1151 (D.C. Cir. 1983) .................................................................. 12

Mueller v. Winter,
    485 F.3d 1191 (D.C. Cir. 2007) .................................................................. 32

National Federation of Federal Employees v. Greenberg,
    983 F.2d 1993 (D.C. Cir. 1993) .................................................................. 26

Nyunt v. Chairman, Broadcasting Board of Governors,
    589 F.3d 445 (D.C. Cir. 2009) .................................................................. 21

O'Donnell v. Barry,
    148 F.3d 1126 (D.C. Cir. 1998) .................................................................. 12, 13

Orange v. District of Columbia,
    59 F.3d 1267 (D.C. Cir. 1995) .................................................................. 13

Oryszak v. Sullivan,
    576 F.3d 522 (D. C. Cir. 2009) .................................................................. 20

Paul v. Davis,
    424 U.S. 693 (1976) ................................................................ 12

Perez v. FBI,
    71 F.3d 513 (5th Cir. 1995) ..................................................... 25

Peterson v. Department of Navy,
    687 F. Supp. 713 (D.N.H. 1988) ........................................ 24, 25

Pinkney v. District of Columbia,
    439 F. Supp. 519 (D.D.C. 1977) ........................................ 13, 14

Reuber v. United States,
    829 F.2d 133 (D.C. Cir. 1987) .................................................. 31

Ryan v.Reno,
    168 F.3d 520 (D.D.C. 1999) ........................................ 20, 29, 30

Saha v. George Washington University,
    No. 09-7022, 2009 WL 5125528 (D.C. Cir. Dec. 23, 2009) ............. 23

Stehney v. Perry,
    101 F.3d 925 (3d Cir. 1996) ............................................. passim

Sullivan v. Central Intelligence Agency,
    No. 07-0685 (D.D.C. March 6, 2009) ....................................... 30

United States Info. Agency v. Krc,
    905 F.2d 389 (D.C. Cir. 1990) ................................................. 30

United States v. Fausto,
    484 U.S. 439 (1988) ............................................................. 21

Weber v. United States,
    209 F.3d 756 (D.C. Cir. 2000) ................................................ 30

Williams v. Reilly,
    743 F. Supp. 168 (S.D.N.Y. 1990) ........................................... 25

**STATUTES**

5 U.S.C. § 552a(e)(5) ............................................................... 29

5 U.S.C. § 7513 ......................................................................... 7

28 C.F.R. § 17.15(b) ........................................................................................ 6

28 C.F.R. §§ 17.41-17.47 ............................................................................... 5,8

28 C.F.R. § 17.41(a) ....................................................................................... 15

28 C.F.R. § 17.41(b) ......................................................................................... 5

28 C.F.R. § 17.47(a) ......................................................................................... 6

28 C.F.R. § 17.47(h) ......................................................................................... 6

Exec. Order No. 12968, 60 Fed. Reg. 40245 (1995) ................................ 2,3,8

Exec. Order No. 10816, 24 Fed. Reg. 3777 (1959) ....................................... 3

Exec. Order No. 10290, 16 Fed. Reg. 9795 (1951) ....................................... 3

Exec. Order No. 10450, 18 Fed. Reg. 2489 (1953) ....................................... 3

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| JOHN DOE | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Case:  1:10-cv-00049 RMC |
| v. | ) | |
| | ) | |
| FEDERAL BUREAU OF INVESTIGATION, | ) | |
| and DEPARTMENT OF JUSTICE, | ) | |
| | ) | |
| Defendants. | ) | |
| _____ | ) | |

**MEMORANDUM IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS**

**INTRODUCTION**

In this action, a former employee of the Federal Bureau of Investigation asks the Court to second-guess the national security determinations made by defendants in revoking his security clearance.   Specifically, he alleges that the revocation of his security clearance violated his Fifth Amendment right to due process (Counts I and II), the Administrative Procedure Act ("APA") (Count III), his First Amendment right of association (Count IV), and the Privacy Act (Count V). Plaintiff asks the Court to require defendants to provide him with an opportunity to contest the revocation and to rescind the revocation of his security clearance and reinstate his employment.

The claims raised by plaintiff present no legal basis for such relief.  In Count I, he alleges that the failure to accord him an opportunity for administrative review of the revocation decision violated the due process clause of the Fifth Amendment.  This claim fails because he has not been deprived of any protected property or liberty interest. As the Supreme Court recognized, "no one has a 'right' to a security clearance." Department of Navy v. Egan, 484 U.S. 518, 528 (1988).  Moreover, while the Executive Branch in its discretion has established a procedural

process which provides an opportunity for administrative review in most cases, Executive Order

No. 12968, 60 Fed. Reg. 40245 (1995), Section 5.2(d) of that Executive Order explicitly provides

that those procedures shall not be made available, where the head of the agency or the deputy

certifies that providing the procedures "cannot be provided in a particular case without damaging

the national security interest by revealing classified information." In this case, the Deputy

Attorney General personally certified that those procedures could not be made available to

plaintiff without damaging the national security interests of the United States by revealing

classified information. His claim in Count II that he has been deprived of a liberty interest in his

reputation and ability to pursue other employment opportunities also fails. He cannot establish a

deprivation of liberty interest under the "reputation-plus" test because he has not alleged that

defendants have made any public statements regarding the revocation of his security clearance.

Moreover, even if they had, the revocation of a security clearance does not impugn plaintiff's

moral character. He also cannot establish a deprivation of a liberty interest under the "stigma or

disability" test because the revocation of his security clearance has not broadly precluded him

from other employment opportunities.

     In Counts III and IV, plaintiff seeks to challenge the merits of the decision to revoke his

security clearance by alleging that the decision violated the Administrative Procedure Act and his

First Amendment rights. Courts, however, do not have the authority to review the merits of a

decision to revoke a security clearance. Egan, 484 U.S at 527. As the Supreme Court has

recognized, the decision to grant or revoke a security clearance to a particular individual is a

sensitive and inherently discretionary judgment which is committed by law to the Executive

Branch.

Plaintiff's claim in Count V that defendants violated Section 552a(e)(5) of the Privacy Act is simply a backdoor attempt to challenge the revocation decision and thus fails for the same reason. This Court cannot determine whether the revocation of plaintiff's security decision was based on inaccurate records without assessing the merits of the denial itself, which is exactly what is not permitted by Egan. In any event, plaintiff's claims must dismissed because plaintiff has not stated a claim under the Privacy Act.

Accordingly, plaintiff's complaint should be dismissed under Fed. R. Civ. P. 12(b)(1) for lack of jurisdiction and under Fed. R. Civ. P. 12 (b)(6) for failure to state a claim upon which relief may be granted.

## BACKGROUND

**A.    President's Authority to Limit Access to Classified Information**

The President, as the "Commander in Chief of the Army and Navy of the United States," U.S. Const., Art. II, § 2, has "authority to classify and control access to information bearing on national security and to determine whether an individual is sufficiently trustworthy to occupy a position in the Executive Branch that will give that person access to such information." Egan, 484 U.S. at 527. Pursuant to this power, U.S. presidents have issued Executive Orders ensuring the proper classification of sensitive information and limiting the access to such information. E.g., Exec. Order No. 10290, 16 Fed. Reg. 9795 (1951); Exec. Order No. 10450, 18 Fed. Reg. 2489 (1953); Exec. Order No. 10816, 24 Fed. Reg. 3777 (1959).

Executive Order No. 12968, 60 Fed. Reg. 40245 (1995), establishes a uniform Federal personnel security program for granting access to classified information. "Classified information" is defined as "information that has been determined pursuant to Executive Order

3

No. 12958, or any successor order, Executive Order No. 12951, or any successor order, or the

Atomic Energy Act of 1954 (42 U.S.C. § 2011), to require protection against unauthorized

disclosure." Id. § 1.1.

Under Executive Order No. 12968, a determination of eligibility for access to such

information "is a discretionary security decision." Id. § 3.1(b).  "Eligibility shall be granted only

where facts and circumstances indicate access to classified information is clearly consistent with

the national security interests of the United States, and any doubts shall be resolved in favor of

national security." Id.  When an employee has been determined not to meet the eligibility

standard, the employee, with certain exceptions noted below, is provided: (1) a written

explanation of the basis for that conclusion "as the national security interests of the United States

and other applicable law permit;" (2) upon request, any documents, records, and reports upon

which a denial is based to the extent that such documents would be available under the Freedom

of Information or the Privacy Act; (3) notice of his right to be represented by counsel; (4) "a

reasonable opportunity to reply in writing to, and request a review of, the determination;" (5) a

written notice of and the reasons for the results of the review; (6) an opportunity to appeal in

writing to a high-level panel; and (7) an opportunity to appear personally and to present relevant

documents, material and information. Id. § 5.2(a).

Executive Order No. 12968, however, recognizes that these administrative review

procedures are not appropriate in all cases.  It provides that:

> [w]hen the head of an agency or principal deputy personally
> certifies that a procedure set forth in this section cannot be made
> available in a particular case without damaging the national
> security interests of the United States by revealing classified
> information, the particular procedure shall not be made available.

This certification shall be conclusive.

Id. § 5.2(d). The Executive Order further provides that:

> This section shall not be deemed to limit or affect the responsibility and power of an agency head pursuant to any law or other Executive order to deny or terminate access to classified information in the interests of national security. The power and responsibility to deny or terminate access to classified information pursuant to any law or other Executive order may be exercised only where the agency head determines that the procedures prescribed in subsection (a) of this section cannot be invoked in a manner that is consistent with national security. This determination shall be conclusive.

Id. § 5.2(e).

Executive Order No. 12968 also states that it "is intended only to improve the internal management of the executive branch and is not intended to, and does not, create any right to administrative or judicial review, or any other right or benefit or trust responsibility, substantive or procedural, enforceable by a party against the United States, its agencies or instrumentalities, its officers or employees, or any other person." Id. § 7.1(e).

**B.     DOJ Regulations**

Pursuant to Executive Order No. 12968 and other Executive Orders, the Department of Justice issued regulations establishing procedures for determining eligibility for access to classified information. 28 C.F.R. §§ 17.41-17.47. Like Executive Order No. 12968, the regulations state that "[a] determination of eligibility for access to classified information is a discretionary security decision based on judgments by appropriately trained adjudicative personnel." 28 C.F.R. § 17.41(b). "Eligibility shall be granted only where facts and circumstances indicate access to classified information is clearly consistent with the national

security interests of the United States and any doubt shall be resolved in the favor of national

security." Id. The regulations provide that employees shall generally be provided with a written

explanation of the basis for the decision "as the national security interests of the United States

and other applicable law permit" and an opportunity to seek review by the Access Review

Committee. 28 C.F.R. § 17.47(a).[1] The regulations, however, specifically provide that "[w]hen

the Attorney General or Deputy Attorney General personally certifies that a procedure set forth in

this section cannot be made available in a particular case without damaging the national security

interests of the United States by revealing classified information, the particular procedure shall

not be made available." 28 C.F.R. § 17.47(h). The regulations further state this decision "is a

discretionary and final decision not subject to further review." Id.

<h2 style="text-align:center">PLAINTIFF'S FACTUAL ALLEGATIONS[2]</h2>

Plaintiff alleges that he was employed by the FBI in its Counterterrorism Divison in 2004.

Complaint, ¶¶2, 7. He alleges that "on October 28, 2005, two FBI agents, accompanied by the

Director of Human Resources for the FBI's Counterterrorism Bureau, visited [him] at home" to

deliver two letters. Id. ¶ 12. The first letter, dated October 28, 2005 from Sharon Durkin, Chief,

Personnel Security Adjudication Section, stated that his Top Secret security was suspended upon

receipt of the letter. Id. ¶ 13. The letter explained that the suspension was "based on serious

security concerns regarding [his] conduct that have been raised." Id. The letter also stated that

_____

[1] The ARC consists of the Deputy Attorney General or a designee, the Assistant Attorney General for National Security or a designee, and the Assistant Attorney General for Administration or a designee. 28 C.F.R. § 17.15(b).

[2] While defendants do not concede any of plaintiff's allegations, they are assumed to be true for purpose of this motion to dismiss.

the "entire matter will be closely reviewed before a final determination is made." Id. The second

letter, also dated October 28, 2005, from Diana M. De Canio, Chief, Performance, Recognition

and Awards Unit, Administrative Services, notified him that he was being placed on unpaid

administrative leave in accordance with 5 U.S.C. § 7513. Id. ¶ 14. The letter explained that he

was being placed on administrative leave because of the suspension of his Top Secret security

clearance. Id.

On January 12, 2006, plaintiff reported for a FBI-administered polygraph examination.

Complaint, ¶ 18. He alleges that "[t]he FBI polygrapher, Nina Collins, wanted to mirandize

him," and that when he questioned the reason, she stated that "he was under investigation for

espionage." Id. He further alleges that he asked to speak to an attorney and was informed that

the polygraph would need to be rescheduled. Id.

Plaintiff alleges that on February 24 and March 1, 2006, he met with Tron Brekke, a FBI

official in the Security Division and another FBI official for approximately 15 hours. Id. ¶ 19.

He alleges that he was told that "the interview was necessary because his security clearance was

being re-adjudicated." Id. Plaintiff also asserts that Mr. Brekke told him that he "was suspected

of having an unspecified 'foreign preference' for another country." Id.

On March 6, 2006, plaintiff underwent a polygraph examination. Id. ¶ 20. He alleges

that as part of the examination, "he was asked whether he had ever improperly disclosed FBI

information, to which he answered truthfully 'No.'" Id. He claims that he was never informed of

the results of the examination. Id.

By a letter dated May 8, 2008, Ronald J. Corvington, Assistant Director, Security

Division, notified plaintiff of the decision to revoke his Top Secret Security clearance, effectively

7

immediately, based on plaintiff's "documented behavior, including your own admissions, that casts serious doubt on your judgment, reliability, and trustworthiness." Complaint, ¶ 24. Mr. Corvington further explained that "[p]ursuant to Executive Order (EO) 12968 and Title 28 Code of Federal Regulations Part 17.47, the appeal procedures delineated therein are not available if the Deputy Attorney General (DAG) or Attorney General (AG) personally certifies that damage to the national security interests of the United States would result from those procedures by revealing classified information." Id. ¶ 25. He further stated that the Deputy Attorney General personally made that certification in this case on March 31, 2008, and that "this revocation is final." Id.

In June 2008, the FBI sent plaintiff a letter stating that he was being removed from the FBI. Id. ¶ 26.

## ARGUMENT

### I.    PLAINTIFF'S DUE PROCESS CLAIMS IN COUNTS I AND II SHOULD BE DISMISSED FOR FAILURE TO STATE A CLAIM.

In his complaint, plaintiff asserts two Fifth Amendment due process claims. Complaint, ¶¶ 29-43. The first claim (Count I) challenges the procedures used to revoke his security clearance. In that claim, he alleges that his "security clearance and its concomitant benefits constituted a liberty interest," and that the defendants violated the due process clause "[b]y revoking [his] security clearance without providing notice of the charges against him and adequate opportunity to refute such charges." Complaint, ¶¶ 31-32. He further asserts Section 5.2(d) of Executive Order No. 12968 and 28 C.F.R. § 17.47, which provide that defendants may revoke a security clearance without an opportunity to reply or seek

8

administrative review, violates the Fifth Amendment. Complaint, ¶ 34.

Plaintiff's second due process claim (Count II) is based on his assertion that revoking the security clearance impugned his reputation and will limit his employment opportunities. Specifically, he alleges that defendants violated the due process clause because as a result of the revocation, he "has been falsely branded as a national security threat, lost employment, lost and/or will lose the opportunity to obtain other positions of employment in his field of expertise, had his reputation in the community impugned which has resulted in foreclosing his freedom to take advantage of a range of employment opportunities, and has been precluded from further pursuing his chosen career." Id. ¶ 41.

As explained below, these due process claims are baseless and should be dismissed under Fed. R. Civ. P. 12(b)(6) for failure to state a claim.

**A.    Plaintiff Does Not Have A Protected Due Process Interest in A Security Clearance.**

In Count I, plaintiff alleges that defendants violated the due process clause by revoking his security clearance without providing notice of the charges against him or an opportunity to appeal that decision. This claim is predicated upon the erroneous assumption that he has a protected due process interest in a security clearance. As the Supreme Court recognized, "no one has a 'right' to a security clearance" and the decision to grant a security clearance "an affirmative act of discretion on the part of the granting official." Department of Navy v. Egan, 484 U.S. 518, 528 (1988). Thus, "every court of appeals which has addressed the issue has ruled that a person has no constitutionally protected liberty or property interest in a security clearance or a job requiring a security clearance." Stehney v. Perry, 101 F.3d 925, 936 (3d Cir. 1996). Accord

Jones v. Dep't of Navy, 978 F.2d 1223, 1225-26 (Fed. Cir. 1992); Dorfmont v. Brown, 913 F.2d

1398, 1403-04 (9th Cir. 1990), cert. denied, 499 U.S. 905 (1991); Jamil v. Sec'y of Dep't. of

Defense, 910 F.2d 1203, 1209 (4th Cir.1990); Doe v. Cheney, 885 F.2d 898, 909-10 (D.C. Cir.

1989); Hill v. Dep't of Air Force, 844 F.2d 1407, 1411 (10th Cir.), cert. denied, 488 U.S. 825

(1988).

    As the Courts have explained, "[t]he Executive Branch has constitutional responsibility to

classify and control access to information bearing on national security." Jones, 978 F.2d at 1225

(quoting Hill, 844 F.2d at 1411). Thus, "[a] security clearance is merely temporary permission

by the Executive for access to national secrets." Id. "It flows from a discretionary exercise of

judgment by the Executive as to the suitability of the recipient for such access consistent with the

interests of national security." Id. "The notion of an individual property right in access to the

nation's secrets – by definition a limitation on Executive discretion – is utterly inconsistent with

those principles." Id. Accordingly, because plaintiff has no protected interest in a security

clearance, defendants could not violate the due process clause by revoking his security clearance

without providing notice of the charges against him or an opportunity to seek administrative

review. As the court emphasized in Dorfmont v. Brown, 913 F.2d at 1403, "[w]here there is no

right, no process is due under the Constitution."

    This point was recognized by the court in El Ganayni v. Dep't of Energy, 591 F.3d 176

(3d Cir. 2010). In that case, as here, plaintiff was not provided notice and an opportunity to seek

administrative review of the decision to revoke his security clearance based on Section 5.2(d) and

(e) of Executive Order No. 12968. As here, plaintiff alleged that the failure to provide an

opportunity to contest the revocation violated his right to procedural due process. The court

10

found that this claim lacked any merit because no process was due. Id. at 187 n.6.

Plaintiff's due process challenge to Executive Order 12968 and the DOJ regulations fails for the same reasons. The fact that the Executive Branch in its discretion has established a procedural process which provides an opportunity for administrative review in most cases does not mean that the government must provide the opportunity in all cases. Indeed, as explained above, Executive Order No. 12968 and the regulation on their face explicitly provide that the procedures shall not be available where, as here, the head of the agency or the deputy certify that providing such procedures "cannot be made available in a particular case without damaging the national security interests of the United States by revealing classified information." Executive Order, § 5.2(d); 28 C.F.R. § 17.47(h). Thus, neither the Executive Order nor the regulations establish a right to any procedural protections in revoking a security clearance. Indeed, Section 7.2(e) of Executive Order No. 12968 specifically states that it "is intended only to improve the internal management of the executive branch and is not intended to, and does not, create any right to administrative or judicial review, or any other right or benefit or trust responsibility, substantive or procedural, enforceable by a party against the United States, its agencies or instrumentalities, its officers or employees, or any other person."

Accordingly, Count I of plaintiff's complaint should be dismissed for failure to state a claim.

## B.    Plaintiff Has Not Been Deprived Of A Protected Liberty Interest.

The focus of plaintiff's due process claim in Count II is slightly different. Rather than directly alleging that he has a protected interest in the security clearance, he alleges that in revoking his security clearance defendants deprived him of his liberty interest in his reputation

11

and ability to pursue other employment opportunities. Complaint, ¶ 41. To establish a

deprivation of a liberty interest on this basis, a plaintiff must first show that the government

negatively altered his employment status. Lyons v. Sullivan, 602 F.2d 7, 11 (1st Cir. 1979);

O'Donnell v. Barry, 148 F.3d 1126, 1140 (D.C. Cir. 1998); Mosrie v. Barry, 718 F.2d 1151, 1161

(D.C. Cir. 1983). A plaintiff must then show that in altering his employment status, the

defendant also

> stigmatize[d] the employee or impugn[ed] his reputation so as to
> either (1) seriously damage[d] his standing and associations in his
> community ("reputation-plus"), or (2) foreclose[d] his freedom to
> take advantage of other employment opportunities by either (a)
> automatically excluding him from a definite range of employment
> opportunities with the government or (b) broadly precluding him
> from continuing his chosen career ("stigma or disability").

M.K. v. Tenet, 196 F. Supp. 2d 8, 15 (D.D.C. 2001). Accord Bd. of Regents v. Roth, 408 U.S.

564, 573 (1972); Paul v. Davis, 424 U.S. 693, 710-711 (1976). Plaintiff cannot state a claim

under either the "reputation plus" prong or the "stigma or disability" prong.

## 1. Plaintiff Cannot Establish a Deprivation of a Liberty Interest under the "Reputation-plus" Test.

Plaintiff cannot meet the requirements to establish a deprivation of a liberty interest under

the "reputation-plus" test. To fit within the "reputation-plus" prong, a plaintiff must demonstrate

not only that the agency negatively altered his employment status, but also that the agency made

""public accusations that will damage [the plaintiff's] standing and associations in the

community," in connection with the change in employment status. MK v. Tenet, 196 F. Supp. 2d

at 15 (quoting Doe v. Cheney, 885 F.2d 898, 910 (D.C. Cir. 1989) (emphasis added)).

Plaintiff cannot state a claim under the "reputation-plus" prong because (1) he cannot

establish that defendants have made any public accusations, and (2) revocation of a security

clearance do not impugn plaintiff's moral character.  First, to fit within the "reputation-plus"

prong, a plaintiff "must plead that the allegedly stigmatizing information was 'published' or

otherwise disseminated by the [defendant] to the public." Chabal v. Reagan, 841 F.2d 1216, 1223

(3d Cir. 1988) (quoting Bishop v. Wood, 426 U.S. 341, 348 (1976)).  Accord O'Donnell v. Barry,

148 F.3d 1126, 1140 (D.C. Cir. 1998) (claim dismissed because defendants had made no

defamatory statements about the plaintiff's discharge); Orange v. District of Columbia, 59 F.3d

1267, 1274 (D.C. Cir. 1995) (concluding firing without any associated public statement is not

actionable);  M.K v. Tenet, 196 F. Supp. 2d at 15 (dismissing due process claim of former CIA

employee when there was no public accusations).

In this case, plaintiff has made no allegations that the defendants have made any public

accusations regarding the revocation of his security clearance.   Instead, he only asserts that

"should [he] apply to work for a federal agency or a private civilian employer for a position that

requires even the most rudimentary background investigation, the FBI and/or DOJ will

disseminate information, to include known inaccurate and false information, it maintains in its

files about [him] that will adversely impact upon his reputation and harm or eliminate his

chances for employment."  Complaint, ¶ 42.

This assertion is insufficient for two reasons.  First, the assertion is purely speculative

because there is no allegation that he has applied for a job which requires any background

investigation, much less that the defendants have provided any information regarding the denial

of his security clearance.  "But the threat of a defamatory publication, no matter how imminent it

may be, is not itself actionable as defamation." Pinkney v. District of Columbia, 439 F. Supp.

13

519, 528 (D.D.C. 1977). In that case, as here, plaintiff based his claim on the allegation that information in his personnel file indicating the reason for his termination may be shown to prospective employers if they requested it. The court dismissed the claim because there was no allegation that any such dissemination had actually been made. Id. The decision in Johnson v. Martin, 943 F.2d 15 (7th Cir. 1991), is to the same effect. In that case, a former employee of the Chicago Police Department alleged that stigmatizing information in his personnel file will be made available to future employers. The court dismissed the claim because there was no allegation that such information had actually been made public. The court held while the stigmatizing information in his file may be "a time bomb waiting to explode when sent to a prospective employer, . . . [it] has yet to detonate." Id. at 17. Accordingly, plaintiff's allegation that defendants may provide information to prospective employers in the future is not sufficient.

Second, even if a prospective disclosure could be sufficient in some cases, plaintiff's suggestion that defendants will disclose the reasons for the revocation to the public has no legal basis and ignores the sensitive nature of the information regarding the reason for the revocation of his security clearance. In fact, the information is so sensitive that the Deputy Attorney General, pursuant to Section 5.2(d) of Executive Order 12968 and 28 C.F.R. § 17.47, certified that the appeal procedures set forth in DOJ regulations and Section 5.2(a) of Executive Order 12968 could not be provided to plaintiff in this case without damaging national security interests of the United States by revealing classified information." See supra at 7-8. Indeed, plaintiff alleges that the FBI has not even provided him with a detailed statement or explanation for the reasons for the revocation. Complaint, ¶ 33. Thus, because information regarding the basis for the revocation is classified, that information could not be provided to the public. Instead, at

14

most, it could only be provided to individuals who (1) have the requisite level of security clearance, (2) have demonstrated a need-to-know the information, and (3) have signed an approved nondisclosure agreement. Executive Order No. 12968, § 1.2(c); 28 C.F.R. § 17.41(a). They, in turn, would be barred by Executive Order No. 12958, § 5.5(b)(1), and their secrecy agreement from revealing the classified information to anyone who did not meet those requirements. Such limited disclosure, even if it had been made, cannot constitute a public disclosure. As the Courts of Appeals has recognized, restricted disclosure of such material with limits on further distribution, "is not stigmatizing and does not infringe upon constitutional liberty interests." Doe v. Cheney, 885 F.2d at 910.

Finally, even if defendants had made statements that his security clearance had been denied or revoked, plaintiff could still not establish a liberty interest because such alleged statements do not impugn the plaintiff's moral character or reputation. As the Supreme Court explained,

> [a] clearance does not equate with passing judgment upon an individual's character. Instead, it is only an attempt to predict his possible future behavior and to assess whether, under compulsion of circumstances or for other reasons, he might compromise sensitive information.

Egan, 484 U.S. at 528. Accord Jamil v. Secretary of Defense, 910 F.2d at 1209 ("because of the inherently discretionary judgment required in the decisionmaking process, 'no one has a "right" to a security clearance,' and revocation does not constitute an adjudication of one's character"); Jones v. Dep't of Navy, 978 F.2d at 1226 ("loss [of security clearances] did not reflect upon their characters"). Therefore, plaintiff cannot meet the "reputation-plus" criterion.

15

### 2.    Plaintiff Cannot Establish a Deprivation of Liberty Interest under the Stigma or Disability Test.

Plaintiff also cannot make a claim under the "stigma or disability" prong.  To meet that test, plaintiff must demonstrate that the alteration in his status automatically precludes him from a definite range of employment with the government or broadly precludes him from continuing his chosen career.  M.K., 196 F. Supp. 2d at 15.  Here, plaintiff does not allege that the revocation of the security clearance has precluded him from obtaining employment generally.  Indeed, he cannot.  In fact, plaintiff does not allege that he remains unemployed.[3]  If he has been able to obtain employment, it is fatal to his claim.  Alexis v. District of Columbia, 44 F. Supp. 331, 342 (D.D.C. 1999) (granting summary judgment to the government with respect to plaintiffs who have employment opportunities, abeit temporary ones).

Moreover, the fact that plaintiff was denied a security clearance by the FBI does not mean that he is automatically precluded from positions with other federal agencies.  Cf. Croddy v. Federal Bureau of Investigation, No. 00-651, 2006 WL 2844261 (D.D.C. Sept. 29, 2006) (individuals denied positions with the FBI and Secret Service because of failed polygraph examinations obtained law enforcement positions with the Department of Homeland Security and Drug Enforcement Administration).

Furthermore, even if the revocation of his security clearance may preclude him from obtaining a job which requires a security clearance, he could not establish a deprivation of a liberty interest because an individual has no right to employment in the national security arena or to a security clearance.  While the Supreme Court has stated that a liberty interest includes "the

---

[3] The Court is respectfully referred to the Declaration of Mark S. Zaid, ¶ 5 (attached to plaintiff's Ex Parte Motion for Leave to File Complaint as "John Doe").

right . . . to engage in any of the common occupations of life," Roth, 408 U.S. at 572, a job

requiring a security clearance is not such a job.  To the contrary, courts have specifically held that

an individual has neither a property or liberty interest in such a job. Egan, 484 U.S. at 528;

Stehney, 101 F.3d at 937;  Dorfmont v. Brown, 913 F.2d at 1403-04; Doe v. Cheney, 885 F.2d at

909-10;  Jones v. Department of Navy, 978 F.2d at 1226.  In Dorfmont, 913 F.2d at 1403, the

court rejected plaintiff's claim that the revocation of her security clearance deprived her of the

ability to practice her chosen profession, since without it she could no longer obtain employment

with a defense contractor.  The court found that "[t]he ability to pursue such employment stands

on precisely the same footing as the security clearance itself.  If there is no protected interest in a

security clearance, there is no liberty interest in employment requiring such clearance." Id.

Therefore, even if a plaintiff was precluded from obtaining employment in the area of national

security, he has not been deprived of a liberty interest.

In short, no matter how plaintiff tries to frame his alleged due process interest, he cannot

state such a claim.  Plaintiff did not have any procedural due process rights.  Accordingly,

plaintiff's due process claims in Counts I and II should be dismissed.

## II.    PLAINTIFF'S CHALLENGES TO THE BASIS FOR THE REVOCATION OF HIS SECURITY CLEARANCE IN COUNTS III AND IV SHOULD BE DISMISSED FOR LACK OF JURISDICTION AND FAILURE TO STATE A CLAIM.

In Counts III and IV of his complaint, plaintiff seeks to challenge the national security

determinations made by defendants in revoking plaintiff's security clearance on the grounds that

the decision violates the APA and First Amendment.  In Count III, plaintiff alleges that the

revocation of his security clearance "was based in large part on the false technical results of the

17

polygraph examinations." Complaint, ¶ 46. He asserts that this decision was "arbitrary and capricious and/or an abuse of discretion" because defendants "conduct[ed] an improper examination and unfairly rel[ied] on the results of the polygraph examination, fail[ed] to conduct an comprehensive investigation, and took actions that were unwarranted by the facts, unsupported by substantive evidence, in violation of internal regulations and statutes. . ., contrary to constitutional right, power, privilege, or immunity, or in excess of federal statutory jurisdiction, authority, or limitations, or short of statutory right." Id. ¶ 50. In Count IV, on the other hand, he alleges that the decision to revoke his security clearance was taken to "retaliate against him based on the exercise of his First Amendment right of association." Id. ¶ 56. Plaintiff alleges that "defendants, through their officers and employees, have allowed their personal, unfounded and ill-informed biases regarding the country of Israel and the loyalty of Jewish Americans to improperly and illegally color their personnel decisions," and that "[d]efendants have failed to offer any factual evidence indicating [plaintiff's] associations were illegal, suspect, dangerous, deceptive, improper, or even untoward." Id. 55. In both Counts, plaintiff asks the Court to second-guess the basis of the FBI's decision to revoke his security clearance. Indeed, in his prayer for relief, he specifically asks the Court to "require the FBI to rescind the revocation and termination notices and reinstate his employment." Prayer for Relief, ¶¶ 3-4.

It is well established that the decision to revoke an individual's security clearance is not subject to review. Egan, 484 U.S. at 529. In Egan, the Navy denied a security clearance to a civilian employee. Since the civilian employee's job required a security clearance, he was removed because the Navy had denied his security clearance. He sought review of his security

clearance denial from the Merit Systems Protection Board.  On appeal from the Board's decision,

the Supreme Court held that the Board did not have the authority to review the merits of the

decision to deny or revoke a security clearance.  In its decision, the Supreme Court explained that

the authority to protect national security flows from the President's power under Article II of the

Constitution as Commander in Chief and as head of the Executive Branch.  Id. at 527.  As the

Supreme Court explained, "no one has a 'right' to a security clearance," and the decision to grant

a clearance "requires an affirmative act of discretion on the part of the granting official."  Id. at

528.  Accordingly, while there is a general presumption favoring judicial review, that

presumption "runs aground when it encounters concerns of national security, as in this case,

where the grant of a security clearance to a particular employee, a sensitive and inherently

discretionary judgment call, is committed by law to the appropriate agency of the Executive

Branch."  Id. at 527.  Because the evaluation of the risks to national security and the

determination of how best to protect classified information is "committed to the broad discretion

of the agency responsible," courts have refused to second-guess the decisions regarding denial of

security clearances.  Id. at 529.  As the Supreme Court has emphasized,

> it is not reasonably possible for an outside nonexpert body to
> review the substance of such a judgment and to decide whether the
> agency should have been able to make the necessary affirmative
> prediction with confidence.  Nor can such body determine what
> constitutes an acceptable margin of error in assessing the potential
> risk.

Id.

Since the Egan decision, the courts have consistently held that a decision reviewing the

merits of a decision denying or revoking a security clearance is not subject to judicial review.  El

Ganayni v. U.S. Dep't of Energy, 591 F.3d at 182; Makky v. Chertoff, 541 F.3d 205, 212 (3d Cir.2008);  Duane v. United States Dept. of Defense, 275 F.3d 988, 993 (10th Cir. 2002); Ryan v.Reno, 168 F.3d 520, 523 (D.D.C. 1999); Stehney v. Perry, 101 F.3d at 932; Becerra v. Dalton, 94 F.3d 145, 148-49 (4th Cir. 1996), cert. denied, 519 U.S. 1151 (1997); Guillot v. Garett, 970 F.2d 1320, 1324 (4th Cir. 1992);  Dorfmont v. Brown, 913 F.2d at 1401; Jamil v. Department of Defense, 910 F.2d at 1206; Hill v. Dep't of Air Force, 844 F.2d at 1411.[4]

Even though the merits of a revocation decision cannot be reviewed, some courts have held that they have jurisdiction to hear "constitutional claims arising from the revocation process" and claims regarding "whether an agency followed its own regulations and procedures during the revocation process." Stehney, 101 F.3d at 932.  As explained below, plaintiff's claims in Counts III and IV do not fall within either of those exceptions because plaintiff directly challenges the revocation decision itself and seeks reinstatement of his security clearance. But, even if this Court had jurisdiction over plaintiff's claims, the claim should be dismissed for failure to state a claim upon which relief can be granted.

---

[4] While some courts have dismissed such claims under Fed. R. Civ. P. 12(b)(1) on the grounds that the court lacks subject matter jurisdiction, e.g. Hill v. Dep't of Air Force, 844 F.2d at 1413, the District of Columbia Circuit held that dismissal of such claims under the APA should be dismissed under Fed. R. Civ. P. 12(b)(6) for failure to state a claim since the APA provides no cause of action because the agency action is "committed to agency discretion." Oryszak v. Sullivan, 576 F.3d 522, 526 (D. C. Cir. 2009).   Regardless of which basis is relied upon, the result is the same: challenges to the merits of a decision to revoke or deny a security clearance are not reviewable.

20

A.    **Plaintiff's APA Challenge to the Merits of the Revocation Should Be Dismissed.**

In Count III, plaintiff alleges the revocation decision violates the APA.[5]  Specifically, he alleges that the decision was arbitrary and capricious because, inter alia, the FBI "unfairly rel[ied] on the results of the polygraph examination, fail[ed] to conduct a comprehensive investigation, and took actions that were unwarranted by the facts, [and] unsupported by substantial evidence." Complaint, ¶ 50.  Plaintiff also speculates that the FBI's decision "was based in large part on the false technical results of the polygraph" and that the FBI violated its internal regulations pertaining to its polygraph examinations.  Id. ¶ 46.  To resolve these claims would require the Court to examine the actual reasons for the revocation and weigh the evidence, which is exactly what Egan prohibits.

---

[5]  Although plaintiff seeks reinstatement of his employment in his prayer for relief, he does not directly challenge the FBI's determination to terminate his employment. In other words, he is not alleging that the FBI should have retained him as an employee even if he was ineligible for a Top Secret security clearance.  If plaintiff were to challenge his termination, that claim would be barred by the Civil Service Reform Act ("CSRA"), which "comprehensively overhauled the civil service system creating an elaborate new framework for evaluating adverse personnel actions against [federal employees]." United States v. Fausto, 484 U.S. 439, 443 (1988) (internal citation and quotation marks omitted; alternation in original).  It "proscribes in great detail the protections and remedies applicable to such action, including the availability of administrative and judicial review." Id.  The CSRA thus precludes all other statutory claims challenging federal personnel actions, including APA claims. Croddy v. Federal Bureau of Investigation, Civil Action No. 00-651(EGS), 2006 WL 2844261, at *5 (D.D.C. Sept. 29, 2006); see also Filebark v. U.S. Dep't of Transp., 542 F. Supp. 2d 1, 8 (D.D.C. 2008) ("absent a provision for judicial review in the CSRA, challenges to agency personnel actions cannot be pursued via other statutes, like the APA"), aff'd, 555 F.3d 1009 (D.C. Cir. 2009).  In other words, the CSRA "constitutes *the* remedial regime for federal employment and personnel complaints." Nyunt v. Chairman, Broadcasting Board of Governors, 589 F.3d 445, 448 (D.C. Cir. 2009).  Moreover, the CSRA "preempts judicial review under the more general APA even when that scheme provides no judicial relief—that is, 'what you get under the CSRA is what you get.'" Filebark, 555 F.3d at 1010 (quoting Fornaro v. James, 416 F.3d 63, 67 (D.C. Cir. 2005)).

Plaintiff cannot avoid dismissal of this claim by the insertion of an allegation that FBI violated unspecified FBI regulations regarding polygraph examinations. Complaint, ¶ 47. While in some circumstances courts may "have the power to review whether an agency follow its own regulations and procedures during the revocation process," Stehney v. Perry, 101 F.3d at 932, Count III fails to fit within this exception for at least two reasons.

First, this assertion is premised on the assumption that the FBI based its revocation decision on the results of the polygraph examination. In order to make that determination, this Court would need to determine the basis for the revocation; in other words whether plaintiff's security clearance was revoked because of the results of the polygraph examination or due to other factors separate and apart from the polygraph examination, as he alleges in paragraphs 54 to 57 of his complaint. For this Court to try to determine the factors in revoking his security clearance would demand "some explanation of that decision from the [FBI]." El Ganayni, 591 F.3d at 184. That the Court cannot do. In El Gananyi, as here, the agency had revoked his security clearance without providing him an explanation or an opportunity to appeal because such procedures could not be made available without damaging national security interest by revealing classified information. Plaintiff alleged the revocation violated the First Amendment and equal protection. The Third Circuit found that plaintiff had failed to state a claim resolution of those claims because resolution of those claims would "entail an examination of the basis" for the revocation, which is precisely what Egan prohibits." Id. at 184. The same is true here. Determining whether the results of the polygraph were a determinative factor would "entail an examination of the basis" for the revocation.

Second, even if plaintiff's allegation regarding the alleged violation of FBI regulations

could avoid the jurisdictional hurdle of <u>Egan</u>, plaintiff's allegations in Count III are not sufficient to survive a motion to dismiss under Fed. R. Civ. P. 12(b)(6) for failure to state a claim. While Fed. R. Civ. P. 8 does not require detailed factual allegations, it "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." <u>Ashcroft v. Iqbal</u>, 129 S.Ct. 1937, 1949 (2009). In order to survive a claim under that rule, a complaint must proffer "enough facts to state a claim to relief that is plausible on its face." <u>Bell Atlantic Corp. v. Twombly</u>, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." <u>Ashcroft v. Iqbal</u>, 129 S.Ct. at 1949. "[B]are assertions" amounting to "nothing more than a 'formulaic recitation of the elements' of a . . . claim" are "not entitled to be assumed to be true." <u>Iqbal</u>, 129 S.Ct. at 1950. Thus, Fed. R. Civ. P. 8 "does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions." <u>Id.</u>

In this case, plaintiff must do more than simply allege that the FBI violated its own regulations. To meet the standards set forth in <u>Ashcroft</u> and <u>Twombly</u>, it must specify the regulations which he believes the FBI violated. <u>Saha v. George Washington University</u>, No. 09-7022, 2009 WL 5125528, *1 (D.C. Cir. Dec. 23, 2009). In <u>Saha</u>, plaintiff alleged that the actions taken by the university violated the Faculty Code, but failed to specify the provisions allegedly violated. Citing to <u>Iqbal</u>, the court dismissed for failure to state a claim because plaintiff failed to identify any provisions of the Faculty Code that the university violated. <u>Id.</u> Accordingly, plaintiff cannot avoid dismissal simply by asserting that the FBI failed to follow some unspecified polygraph regulations.

**B.    Plaintiff's First Amendment Challenge to the Revocation of the Security Clearance Should Be Dismissed.**

Plaintiff's claim that the FBI violated his First Amendment rights of association should also be dismissed. Courts repeatedly have concluded that they lack jurisdiction to hear constitutional claims seeking to second-guess the exercise of discretion in revoking a security clearance of a particular individual. For example, in Hill v. Department of Air Force, 844 F.2d at 1411, plaintiff claimed that the suspension of his security clearance violated his constitutional right to due process and equal protection. The district court issued a preliminary injunction requiring the Air Force to reinstate his security clearance. The district court reasoned that it had jurisdiction because plaintiff had raised constitutional claims. Id. The Tenth Circuit reversed, finding that "the district court improperly based its jurisdiction upon constitutional grounds and, in that connection, evaluated the motives and the merits of the agency's action." Id. at 1413. The court stressed that if the restraints imposed by Egan "can be bypassed simply by invoking alleged constitutional rights, it makes the authority of Egan hardly worth the effort."

The court in Peterson v. Department of Navy, 687 F. Supp. 713 (D.N.H. 1988), reached the same conclusion. Plaintiff there alleged that denial of his security clearance was discriminatory because it was based on his handicapping condition of drug and alcohol abuse. The court found that Egan barred it from considering this claim. Id. at 715. As the court explained, resolution of his discrimination claim "would require the Court to undertake a substantive review of the validity of the agency's reasons for denying the clearance," and such review is "expressly forbidden by Egan." The court stressed that if the jurisdictional constraints imposed by Egan could be "bypassed simply by alleging illegal discrimination, Egan would be

24

vitiated." Id. Accord Williams v. Reilly, 743 F. Supp. 168, 171 (S.D.N.Y. 1990) (the "threshold jurisdictional determination is not affected by the fact that the challenge is made on the grounds of a constitutional deprivation").[6]

The Third Circuit decision in Makky v. Chertoff, 541 F.3d at 212-213, also recognized this limitation on review of challenges to a revocation of a security clearance. The Third Circuit noted that an individual is "foreclosed under Egan from challenging the decision to deny the security clearance, even if it were denied due to discrimination." Id. at 213. Thus, the court found that while it had jurisdiction to review Makky's mixed motive Title VII claim, it "cannot question the motivation behind the decision to deny Makky's security clearance." Id.[7]

------

[6] Courts have held that they lack jurisdiction to review such claims in the context of Title VII or other employment discrimination actions for the same reason. See, e.g., Bennett v. Chertoff, 425 F.3d 999, 1002-03 (D.C. Cir. 2005) (Title VII); Hesse v. Dep't of State, 217 F.3d 1372, 1376 (Fed. Cir. 2000), cert. denied, 531 U.S. 1154 (2001) (Whistleblower Protection Act ); Perez v. FBI, 71 F.3d 513, 515 (5th Cir. 1995) (Title VII); Brazil v. U.S. Dep't of Navy, 66 F.3d 193, 197 (9th Cir. 1995) (Title VII); Lovelace v. Stone, 814 F. Supp. 558, 559 (E.D. Ky. 1992) (Rehabilitation Act). As the court explained in Perez, 71 F.3d at 514, "[b]ecause the court would have to examine the legitimacy and possibly pretextual nature of the [agency's] proffered reasons for revoking the employee's security clearance, any Title VII challenge to the revocation would of necessity require same judicial scrutiny of the merits of the revocation."

[7] As noted in Stehney v. Perry, 101 F.3d at 932, some courts have held that they have jurisdiction to hear "constitutional claims arising from the revocation process." Such constitutional claims have involved challenges to the underlying agency's regulations or policies relating to the clearance process, and not claims, such as this one, where plaintiff seeks to second-guess a specific exercise of an agency's discretion regarding the grant or denial of a particular individual's clearance. For example, in Stehney, plaintiff was denied a security clearance because she refused to take a polygraph. Unlike plaintiff here, she did not ask for review of the merits of the decision. Instead, her constitutional claim focused on the constitutionality of the National Security Agency's regulation exempting a small number of internationally renowned mathematicians from the polygraph examination. 101 F.3d at 937. Plaintiff claimed that this regulation violated equal protection because it had a discriminatory effect on women. Id. Although the Third Circuit found that this claim had no merit, it held that it had jurisdiction to review the claim because it did not require review the merits of the decision to deny plaintiff a security clearance. Instead, the claim sought to challenge the constitutionality

The constitutional claim raised by the plaintiff in Count IV clearly is not reviewable.

Like the claim in Count III, Count IV directly seeks to challenge the merits of the decision itself. Specifically, plaintiff challenges the revocation decision by speculating that defendants revoked his security clearance based on what he describes as "innocuous and/or professional" relationships with Israeli citizens or American Israeli Public Affairs Committee officials and asserting that this basis violates his First Amendment right of association. Complaint, ¶¶ 53-57. Resolution of that claim would again require this Court to probe the reasons for the revocation and to evaluate the merits of the "sensitive and inherently discretionary judgment call" made in revoking his security clearance. Egan, 484 U.S. at 527. As the courts have found, that is exactly what is prohibited by Egan.

Even if this Court had jurisdiction to review plaintiff's First Amendment claim, this claim should be dismissed for failure to state a claim for the same reason. The First Amendment claims raised by plaintiff are similar to the claims raised by the plaintiff in El Ganayni v. U.S. Dep't of Energy, 591 F.3d at 180-186. In that case, as here, the plaintiff's security clearance was revoked without providing notice of the reasons and an opportunity for administrative review. As here, plaintiff claimed that the agency, the Department of Energy ("DOE"), had revoked his security clearance in retaliation for his First Amendment activities. Specifically, he alleged that his security clearance was revoked because he had made speeches criticizing the FBI. Id. at 180.

_____

of a procedural regulation. Accord National Federation of Federal Employees v. Greenberg, 983 F.2d 1993 (D.C. Cir. 1993) (challenge to a standard questionnaire used by the Department of Defense in connection with the security clearance process); Hi-Tech Gays v. Defense Indus. Sec. Clearance Office, 895 F.2d 563, 570-74 (9th Cir. 1990) (challenge to a Department of Defense's policy of conducting mandatory investigations of all homosexual applicants for Secret and Top Secret clearance); Huynh v. Carlucci, 697 F. Supp. 61, 63 (D.D.C. 1988) (challenge to DOD's regulation denying security clearance to recently-naturalized citizens from certain countries).

The Third Circuit upheld the district court's dismissal of his claims on the grounds that he failed

to state a claim. As the Third Circuit noted, to state a prima facie case of retaliation, plaintiff

"must show (1) 'that his conduct was constitutionally protected' and (2) that 'his protected

activity was a substantial or motivating factor in the alleged retaliatory action.'" Id. at 184

(quoting Ambrose v. Twp. of Robinson, 303 F.3d 488, 493 (3d Cir. 2002). The court found that

defendant may then defeat a prima facie case by showing that it would have undertaken the same

actions in absence of the protected speech. Id. The court found that even if plaintiff could

establish the first element, "the second element was problematic" because

> [p]roving that El Ganayni's political speech was "a substantial or
> motivating factor" in the decision to revoke his clearance would
> inevitably require review of the merits of the DOE's decision.
> There is simply no way to prove or disprove what was-or perhaps
> more importantly for this case, what was not – a "substantial or
> motivating factor" in the decision to revoke El-Ganayni's clearance
> without demanding *some* explanation of that decision from the
> DOE. It would require discovery of DOE officials and documents
> concerning the various "factors" that led to the decision to revoke
> the clearance, and scrutiny of those factors to determine which
> were "substantial" or "motivating." We can discern no difference
> between that inquiry and the review of the merits that is forbidden
> by *Egan*.

Id.

    The Court further found that even if plaintiff could establish a prima facie case,

defendant's right to defend itself against that claim would raise problems under Egan. The Third

Circuit explained "[w]eighing the strength of the government's arguments against El Ganayni's

claims of pretext would amount to a judgment on the merits of the decision to revoke El

Ganayni's clearance." Id. at 185. Based upon these findings, the Third Circuit concluded that

the First Amendment claim was properly dismissed because "the Secretary of Energy, who serves

27

as the trustee of the presidential power over information critical to national security, simply cannot be ordered to justify his decisions in this area, nor can his justification be subjected to weighing and second-guessing by a 'non-expert outside body' such as a factfinder in a federal court." Id. (quoting Egan, 484 U.S. at 529). The court found that El-Ganayni's equal protection claim failed for the same reason. As the court explained, determining whether the decision was based on his religion or national origin "would inevitably require review of the merits of DOE's decision." Id. at 186. The court found that the DOE cannot be held to a "burden" of justifying the decision to revoke El Ganayni's clearance "because the DOE has no duty to justify the decision, period." Id.

The same problem is presented by plaintiff's claim in Count IV. In that count, plaintiff alleges that the FBI's decision to revoke his security clearance was based upon "personal, unfounded, and ill-informed biases regarding the country of Israel and the loyalty of Jewish Americans." Complaint, ¶ 55. Based on this alleged bias, plaintiff speculates that the revocation is based upon "false accusations that [he] committed espionage on behalf of or for the benefit of Israel simply because he had contacts with Israel citizens or AIPAC officials." As in El Ganayani, resolution of those claims would "entail an examination of the basis" of the revocation decision, which "is precisely what Egan prohibits." El Ganayni, 591 F.3d at 184.

Accordingly, Count IV should be dismissed under Egan because this Court lacks jurisdiction to review the revocation of plaintiff's security clearance and, even if this Court has jurisdiction, plaintiff fails to state a claim.

## III.    PLAINTIFF'S CLAIMS UNDER THE PRIVACY ACT SHOULD BE DISMISSED.

Plaintiff's Privacy Act claim seeks monetary damages for claimed injuries arising from

28

the defendants' alleged violation of 5 U.S.C. § 552a(e)(5) by failing to maintain files "with such accuracy, relevance, timeliness, and completeness" as required "to assure fairness in any determination relating to the qualifications, character, rights, or opportunities of, or benefits to" plaintiff. Complaint. ¶ 61. In particular, plaintiff alleges that defendants "failed to afford [him] an adequate opportunity to correct the record and/or ignored his attempts to do so." Id. ¶ 62. As a result, plaintiff alleges that he "lost his employment and the opportunity to obtain other positions of employment, had his reputation in the community impugned, which has resulted in foreclosing his freedom to take advantage of a range of employment opportunities, and has precluded him from pursuing his chosen career within the Intelligence, Law Enforcement or foreign policy communities." Id. ¶ 65. As explained below, plaintiff's Privacy Act should be dismissed .

### A.   Plaintiff's Privacy Act Challenges Must Be Dismissed On Separation Of Powers Grounds.

As explained supra at 18-20, it is well-settled that courts and other "nonexpert" bodies outside the Executive Branch have neither the authority under the Constitution to review the substance of an agency's security clearance decision. See, e.g., Egan, 484 U.S. 518; Ryan v. Reno, 168 F.3d at 523. That decision is a "sensitive and inherently discretionary judgment call" and "is committed by law to the appropriate agency of the Executive Branch." Egan, 484 U.S. at 527.

This jurisdictional bar precludes plaintiff from making statutory claims which would require a court to review the merits of an agency's security clearance determination. In Ryan, for example, the D.C. Circuit held that "employment actions based on [the] denial or revocation of a

security clearance is not actionable under Title VII" because the district court "could not proceed with the appellants' discrimination action without reviewing the merits of DOJ's decision not to grant a clearance." 168 F.3d at 524. See also, e.g., Weber v. United States, 209 F.3d 756, 759 (D.C. Cir. 2000) (an adverse decision on an issue of security clearance is not subject to review under the whistleblower protection provisions of the Civil Service Reform Act); United States Info. Agency v. Krc, 905 F.2d 389, 395-97 (D.C. Cir. 1990) (Foreign Service Act did not give the Foreign Service Grievance Board jurisdiction to review a decision of a security program manager to withdraw plaintiff from overseas postings; nor did the court have jurisdiction under the APA to review the decision); Beattie v. Boeing Co., 43 F.3d 559, 566 (10th Cir. 1994) (merits of security clearance decisions not subject to judicial review, thus precluding Bivens constitutional tort claim); Guillot v. Garrett, 970 F.2d 1320, 1326 (4th Cir. 1992) (individual security classification determinations not subject to judicial review for alleged violations of Rehabilitation Act of 1973).

    This Court has recognized this bar with respect to Privacy Act claims involving challenges to an agency's decision to revoke a security clearance. Sullivan v. Central Intelligence Agency, No. 07-0685 (D.D.C. March 6, 2009) (Attachment A). In that case, plaintiff alleged that the CIA had violated the Privacy Act by disseminating information regarding his revocation of his security clearance. Judge Robertson dismissed the claim on the grounds that "it is really a demand that the Court review the merits of the security decision — a review which is prohibited on separation of powers grounds." Id. at 7.

    Plaintiff's Privacy Act claim is clearly barred for the same reason. As noted, plaintiff's claimed Privacy Act injuries allegedly arise from the revocation of his security clearance. To

recover money damages on his Privacy Act accuracy claim, therefore, plaintiff would have to

show, inter alia, that the revocation of his security clearance was caused by inaccuracies in the

FBI's records pertaining to him. See, e.g., Hubbard v. U.S. E.P.A. Adm'r, 809 F.2d 1, 4-5 (D.C.

Cir. 1986); Reuber v. United States, 829 F.2d 133, 140-41 (D.C. Cir. 1987). Obviously, the

Court cannot decide whether the revocation of his security clearance was based on inaccurate

records without assessing the merits of the denial itself. In short, plaintiff's challenge to the

factual "accuracy" of records in plaintiff's file is simply a back-door challenge to the revocation

decision itself. Accordingly, this Court lacks jurisdiction over plaintiff's Privacy Act claim.[8]

### B.    Plaintiff Has Failed To State A Privacy Act Claim.

In any event, even if the Court has jurisdiction over plaintiff's Privacy Act claim, that

claim would have to be dismissed because plaintiff has failed to allege any actionable conduct

under the Privacy Act.[9] "It is well-established that, 'generally speaking, the Privacy Act allows

---

[8] Even setting aside the separation of powers concerns raised by plaintiff's Privacy Act claims, that claim – like plaintiff's APA claim – would also be precluded by the CSRA as it, at bottom, seeks to challenge the government's judgment in revoking plaintiff's security clearance and termination of his employment. See, e.g., Kleiman v. Dep't of Energy, 956 F.2d 335, 338 (D.C. Cir. 1992) ("This court has refused to allow 'the exhaustive remedial scheme of the CSRA' to be 'impermissibly frustrated,' by granting litigants, under the aegis of the Privacy Act or otherwise, district court review of personnel decisions judicially unreviewable under the CSRA.") (citation omitted); Hubbard v. U.S. EPA Adm'r, 809 F.2d at 5. ("Since Congress specifically chose to oust the district courts of jurisdiction to review government personnel practices, it would be anomalous to construe the pre-existing Privacy Act to grant the district court power to do indirectly that which Congress precluded directly.").

[9] Plaintiffs allegations also fall short of the pleading requirements set forth in Iqbal, 129 S.Ct. at 1949, and Bell Atlantic, 550 U.S. at 570. In his case, plaintiff's allegations are nothing more than a "formulaic recitation of the elements" of a Privacy Act claim. Complaint, ¶¶ 60-68. He does not specify what alleged inaccurate information is contained in the FBI's System of Records. Nor does he state the basis for his conclusory allegations that the FBI's actions were wilful and intentional. Plaintiff should not be permitted to use the Privacy Act as a fishing expedition to discover what information is contained in the FBI's files. This is especially true

for correction of facts but not correction of opinions or judgments." <u>Mueller v. Winter</u>, 485 F.3d

1191, 1197 (D.C. Cir. 2007) (citation omitted). In particular, the Act is intended to remedy

"factual or historical errors," and is not a vehicle for addressing "the *judgments* of federal

officials . . . reflected in records maintained by federal agencies." <u>Kleiman</u>, 956 F.2d at 337-38

(emphasis in original) (citation and internal formatting omitted)). <u>See also</u> <u>Bernard v. Dep't of

Defense</u>, 362 F. Supp. 2d 272, 281 (D.D.C. 2005) ("dismissing Privacy Act challenges to

"procedures used to revoke the plaintiff's security clearance" to the extent plaintiff "was seeking

to invalidate the decision"). Accordingly, "a complaint [that] is not about the accuracy of . . .

records, but about the underlying decision they reflect" is not cognizable under the Privacy Act.

<u>Levant v. Roche</u>, 384 F. Supp. 2d 262, 270 (D.D.C. 2005) (dismissing Privacy Act claims

pursuant to Fed. R. Civ. P. 12(b)(6)).

      Here, plaintiff's Privacy Act claim is, in fact, a challenge to the revocation of plaintiff's

security clearance, and not to the historical accuracy of any records underlying that decision. The

heart of this case is the fact that defendants have not—and indeed cannot—share with plaintiff

the specific information about the reasons for the revocation of plaintiff's security clearance. <u>See</u>

Complaint, ¶ 33 ("The FBI failed to provide John Doe with a statement of reasons or other

explanation for its actions simply citing 'national security interest'"). Plaintiff simply does not

know the reasons for the revocation of his security clearance, and therefore has no basis to allege

the records underpinning the revocation are "inaccurate." And in alleging that his records are in

inaccurate, plaintiff is once again attempting to ascertain the basis for the revocation of his

---

here, where defendants cannot share with plaintiff the factual basis for the revocation of his
security clearance.

security clearance."

Accordingly, plaintiff's Privacy Act claim should be dismissed.

## CONCLUSION

For the above stated reasons, this Court should grant defendants' motion to dismiss.

Respectfully submitted,

TONY WEST
Assistant Attorney General

RONALD C. MACHEN
United States Attorney

SUSAN K. RUDY
Assistant Branch Director

s/Marcia K. Sowles
MARCIA K. SOWLES, DC Bar No. 369455
Senior Counsel
United States Department of Justice
Civil Division, Federal Programs Branch
20 Massachusetts Avenue N.W.  Room 7114
Washington, D.C.  20530
Tel.: (202) 514- 4960
Fax: (202) 616- 8470
E-mail:  marcia.sowles@usdoj.gov

33